UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

APPLE MORTGAGE CORP.,                        :
                                             :   Civil Action No. 13 CV 9233 (JGK)
                    Plaintiff,               :
                                             :
        -against-                            :
                                             :
RICHARD BARENBLATT, KEITH FURER,             :
DAVID BREITSTEIN and KEVIN UNGAR,            :
                                             :
                    Defendants.              :
                                             :
-------------------------------------------------------------- x


### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Richard C. Schoenstein
SATTERLEE STEPHENS BURKE
  & BURKE LLP
230 Park Avenue
New York, NY  10169
Telephone:  (212) 404-8707
Fax:  (212) 818-9606
Email:  rschoenstein@ssbb.com

Attorney for Defendants

2260441_1

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 1

I.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
      ON THEIR COUNTERCLAIMS FOR COMPENSATION .............................................. 1

      A.  Apple Does Not Justify Its Refusal to Pay Commissions
          Owed At the Time of Defendants Departures................................................. 1

      B.  Apple Does Not Justify Its Payment of Commissions That
          Deviated from the Formulas in the Compensation Agreements .................... 3

II.   APPLE'S CLAIMS SHOULD BE DISMISSED ............................................................ 4

      A.  Apple Lacks Standing ....................................................................................... 4

      B.  Apple Has No Compensable Damages ........................................................... 6

      C.  Apple's Underlying Claims Lack Merit ......................................................... 7

            1.    Breach of Duty of Loyalty ...................................................... 8

            2.    Theft of Business Property....................................................... 8

            3.    Unfair Competition .................................................................. 8

            4.    Breach of Contract ................................................................... 9

            5.    Conspiracy ............................................................................... 9

            6.    The Computer Fraud and Abuse Act ....................................... 9

            7.    Constructive Trust.................................................................. 10

CONCLUSION.................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbeeny v. Kennedy Executive Search, Inc.*,
   71 A.D.3d 177, 893 N.Y.S.2d 39 (1st Dep't 2010) ................................................2

*Bankers Sec. Life Ins. Soc. v. Shakeridge*,
   49 N.Y.2d 939 (1980) ................................................................................10

*Barbagallo v. Marcum LLP*,
   820 F.Supp.2d 429 (E.D.N.Y. 2011) ....................................................................9

*Bouder v. Prudential Financial, Inc.*,
   No. 2:06-04359, 2015 WL 857655 (D.N.J. Feb. 26, 2015) ....................................4

*Chimart Assoc. v. Paul*,
   66 N.Y.2d 570 (1986) ................................................................................5, 6

*Design Strategy, Inc. v. Davis*,
   469 F.3d 284 (2d Cir. 2006)................................................................................2

*Geo Group, Inc. v. Community First Services, Inc.*,
   No. 11-cv-1711, 2012 WL 1077846 (S.D.N.Y. March 30, 2012) ...........................8

*Iron Mountain Information Management, Inc. v. Taddeo*,
   455 F.Supp.2d 124 (E.D.N.Y. 2006) ....................................................................8

*Jung v. Chorus Music Studio, Inc.*,
   No. 13-cv-1494, 2014 WL 4493795 (S.D.N.Y. Sept. 11, 2014) ............................8

*Karic v. Major Automotive Cos.*,
   992 F.Supp.2d 196 (E.D.N.Y. 2014) ................................................................3, 4

*Merrick Bank Corp. v. Chartis Specialty Ins. Co.*,
   No. 12-cv-7315, 2015 WL 4126780 (S.D.N.Y. July 7, 2015)................................6

*Musico v. Champion Credit Corp*.,
   764 F.2d 102 (2d Cir. 1985)................................................................................2

*New York Racing Ass'n v. Nassau Regional Off-Track Betting Corp.*,
   29 Misc. 3d 539 (Sup. Ct. Nassau Cty. 2010) ....................................................8

*Pachter v. Bernard Hodes Group, Inc.*,
   10 N.Y.3d 609 (2008) ................................................................................3, 4

*Pachter v. Bernard Hodes Group, Inc.*,
    505 F.3d 129 (2d Cir. 2007)..................................................................................3

*Paraco Gas Corp. v. Travelers Casualty and Surety Co.*,
    51 F.Supp.3d 379, 391 (S.D.N.Y. 2014)...............................................................5

*Thyroff v. Nationswide Mut. Ins. Co.*,
    8 N.Y.3d 283 (2007) .............................................................................................8

*Vasilow Co. v. Anheuser-Busch, Inc.*,
    117 F.R.D. 345 (E.D.N.Y. 1987) ..........................................................................5

*Yudell v. Israel & Asoc.*,
    248 A.D.2d 189, 669 N.Y.S.2d 580 (1st Dep't 1998) ...........................................2

## Statutes

Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2), 1030(a)(4) and
    1030(a)(5) ..............................................................................................................9

New York Labor Law ....................................................................................... *passim*

## Other Authorities

Federal Rule of Civil Procedure 26(a)(2) .......................................................................9

Federal Rule of Evidence 702.........................................................................................9

Federal Rule of Evidence 801.........................................................................................5

iii

Defendants respectfully submit this reply memorandum of law in further support of their motion for summary judgment.

## PRELIMINARY STATEMENT

So here we are.  Apple's stampede through this Court and the Manhattan DA's Office has reached its zenith.  But as the dust settles on the zealous prosecution of its provocative claims, Apple's $15 million Complaint is reduced to a whimpered plea for $140,000.  Even that modest amount is overblown, conjectural, and without a causal connection to the alleged misconduct. On both its claims and the Counterclaims, Apple's express and tacit concessions are fatal. Summary judgment should be granted in favor of Defendants: (1) on their Counterclaims for unpaid commissions, with both liability and damages determined at this time (Point I(A), *infra*); (2) on their Counterclaims for underpaid past commissions finding liability, with damages to be determined at trial (Point I(B), *infra*); and (3) dismissing Apple's claims for lack of standing, lack of damages and/or failure to establish the underlying elements (Point II, *infra*).

## ARGUMENT

### I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR COUNTERCLAIMS FOR COMPENSATION

Apple concedes that the applicable commission formulas were set forth in the Compensation Agreements.  (Pl. Opp. Mem. at 9, 12; Pl. Resp. Statement ¶¶ 8, 9, 10; DSMF ¶¶ 8, 9, 10.)  These express terms require summary judgment in favor of Defendants on their Counterclaims for breach of contract and violating of the Labor Law.

#### A.   Apple Does Not Justify Its Refusal to Pay Commissions Owed At the Time of Defendants Departures

As its excuse for not paying commissions owed upon the departure of Defendants, Apple asserts breaches of contract or fiduciary duties (Pl. Opp. Mem. at 8-11), but neither position is tenable.  As to breach of contract, Defendants have previously briefed that the Handbook was, on

its face, not a contract, and that Apple misapplies the sentence in the Compensation Agreements regarding "Federal and State laws."  Moreover, Apple's own breaches by failing to pay proper commissions predate the alleged misconduct by Defendants and – by Apple's own logic – preclude Apple from asserting breach.

As to duty of loyalty, Apple does not assert disloyalty as to any specific commission sought (Pl. Resp. Statement ¶ 47; DSMF ¶ 47), but ignores that "task-by-task" compensation is not forfeited under such circumstances.  *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 301 (2d Cir. 2006) (commissions should not be forfeited); *Musico v. Champion Credit Corp.*, 764 F.2d 102, 114 (2d Cir. 1985).  Thus, the faithless servant doctrine has no application here.

Beyond this, Apple objects that Defendants are trying to "shift the burden" to Apple to show that post-termination commissions are foreclosed.  (Pl. Opp. Mem. at 13.)  Actually, the burden belongs to Apple to begin with.  Labor Law § 191 requires written "details pertinent to payment of. . . commissions and all other monies earned and payable in the case of termination of employment by either party" and, absent such, presumes "that the terms of employment that the commissioned salesperson has presented are the agreed terms of employment."

The Compensation Agreements support Defendants' claims, providing that compensation "cannot vary from one transaction to another" (Pl. Resp. Statement ¶ 10; DSMF ¶ 10), wording even stronger than in *Arbeeny v. Kennedy Executive Search, Inc.*, 71 A.D.3d 177, 182, 893 N.Y.S.2d 39, 43 (1st Dep't 2010) (post-employment commissions paid for placements "arranged"), or *Yudell v. Israel & Asoc,* 248 A.D.2d 189, 669 N.Y.S.2d 580 (1st Dep't 1998) (post-employment fees on commissions on fees "originated by").  *Yudell* distinguishes between former employees seeking "open-ended" commissions, and those, like the Defendants here, who simply want commissions for deals they originated while employed.

2

Accordingly, Defendants should be awarded the underlying amounts sought and not disputed – Barenblatt: $76,366.42; Breitstein: $15,827.72; Furer: $63,826.50; Ungar: $26,621 (DSMF ¶ 43) – along with interest, and with double damages and attorney's fees under Labor Law § 191-c.  Only the amount of attorney's fees may require further proceedings.

**B.      Apple Does Not Justify Its Payment of Commissions That Deviated from the Formulas in the Compensation Agreements**

As to commissions predating departure, Apple concedes the amounts paid to Defendants routinely varied from the formulas in the Compensation Agreements, but asserts repetitively that Defendants "agreed" to the variances.  (*See, e.g.*, Appelbaum Opp. Aff. ¶¶ 8, 9, 10, 11, 12, Pl. Resp. Statement ¶¶ 17, 18, 19, 26, 27, 28, 29, 32, 37.)  That is not true or even credible.

Apple never says how or when such an agreement was entered into, admits changing its story on the $276 deductions (Pl. Resp. Statement ¶ 23, 24, 28; DSMF ¶¶ 23, 24, 28), and still offers no explanation for the number.  Even if vacillations and vagueness are not enough to discredit conclusory proclamations to the contrary, the Court can always rely on good old math, which verifies that, as Appelbaum told Breitstein years ago, Apple was trying to recoup the employer portion of FICA.  (DSMF ¶ 22; Breitstein Aff. ¶ 20.)  That explanation is the only basis suggested by any party to derive a bi-monthly charge in the peculiar amount of $276.

In addition, the commission worksheets required by Apple and checked by Appelbaum for completeness before any payments (Pl. Opp. Statement ¶¶ 31-32; DSMF ¶¶ 31-32) are not sufficient to put this matter within the ambit of  *Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609, 617 (2008) and *Pachter v. Bernard Hodes Group, Inc.*, 505 F.3d 129 (2d Cir. 2007). As Judge Vitaliano of the Eastern District of New York noted last year, "*Pachter* made plain that such considerations [as the parties' history of past dealings] are appropriate in the *absence* of a written agreement."  *Karic v. Major Automotive Cos.*, 992 F.Supp.2d 196, 202 (E.D.N.Y. 2014).

3

Apple attempts to distinguish *Karic* because the employee merely "acquiesced" to deductions (Pl. Opp. Mem. at 16), but the true distinction is that there was a written contract in *Karic* and none in *Pachter*. This year, Judge Cecchi in the District of New Jersey similarly distinguished *Pachter* as inapplicable where there was an express contract. *Bouder v. Prudential Financial, Inc.*, No. 2:06-04359, 2015 WL 857655, *7 (D.N.J. Feb. 26, 2015) (holding course of conduct evidence not relevant on claims based on written contracts).

At center, Apple is essentially arguing that Defendants did not complain enough, but it would rewrite contract law to require an immediate objection to pursue a claim of breach. "Silent suffering of a contractual breach certainly does not excuse defendants' failure to live up to their contractual obligations." *Karic*, 922 F.Supp.2d at 202.

With respect to computing damages, Apple admits it failed to produce documents for 2011, half of 2012, or prior to 2010. It offers no calculations and concedes the full amounts cannot be determined. (Pl. Opp. Statement ¶¶ 33-37; DSMF ¶¶ 33-37.) Thus, summary judgment should be granted as to liability under Section 191 of the Labor Law (commissions "in accordance with the agreed terms of employment") and Section 193 (as illegal deductions), and providing that Defendants are entitled to attorney's fees, prejudgment interest, and additional liquidated damages under Section 198(1-a), with the full extent of damages determined at trial.

## II.   **APPLE'S CLAIMS SHOULD BE DISMISSED**

Summary judgment is also appropriate as to Apple's claims which, despite its rabidity, cannot be sustained as a matter of law and should be dismissed in their entirety.

### A.   **Apple Lacks Standing**

Apple stopped originating loans, ceased operations entirely, has no active business, earns no income and is no longer authorized to originate loans. (Pl. Resp. Statement ¶¶ 95-96; DSMF ¶¶ 95-96.) Its status as "an active New York corporation in good standing" and quibbling over

4

the word "defunct" (Appelbaum Opp. Aff. ¶ 3; Pl. Opp. Mem. at 18) are weak and unavailing retorts.  Apple sold its claims to Sterling, despite bold assertions to the contrary.  The unsworn letter from Sterling's in-house counsel (Appelbaum Aff. Ex. A) is inadmissible hearsay.  Fed. R. Evid. 801.  The testimony of Michael Bizenov merely agrees with that letter, without explanation (Rogin Opp. Aff. Ex. A), and is rebutted by Section 1(a) of the Purchase Agreement:

> "[Sterling]will acquire all of the business, assets, and rights (including the rights with respect to leases, proprietary software, corporate names and trade neames, rights to websites, computer equipment, and contracts of APPLE, all as set forth on <u>Exhibit A</u>.

Exhibit A confirms that Sterling purchased "[a]ll assets including but not limited to …" a list set forth there.  Regardless, Appelbaum disputes that Apple sold all of its assets and offers examples.  (Appelbaum Opp. Aff. ¶ 4.)  But he is wrong about Apple's "computer network or system," as all of Apple's "computer equipment" was sold.  (Purchase Agreement § 1(a).)  He is wrong about Apple's "customer loan files and documents," as Sterling bought all of Apple's "proprietary loan origination and processing software and all *databases*."  (Purchase Agreement Exhibit A) (emphasis added.)  Similarly, the notion that Apple did not sell the claims herein is contradicted by the express sale of Apple's "rights" provided for in the Purchase Agreement.

Faced with these facts and the holding in *Vasilow Co. v. Anheuser-Busch, Inc.*, 117 F.R.D. 345, 347 (E.D.N.Y. 1987), Apple turns to the incredible argument that the Purchase Agreement should be reformed for "mutual mistake."  There is no claim here for contract reformation, however, nor is Sterling a party.  Further, there is a "heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties . . . and a correspondingly high order of evidence is required to overcome that presumption." *Chimart Assoc. v. Paul*, 66 N.Y.2d 570, 574 (1986) (affirming summary judgment dismissing reformation claim) (citations omitted); *accord Paraco Gas Corp. v. Travelers Casualty and*

5

*Surety Co.*, 51 F.Supp.3d 379, 391 (S.D.N.Y. 2014) (requiring "clear and convincing evidence."). Given sophisticated parties, with counsel, engaged in an arm's length transaction, resulting in a plain and unambiguous contract, there can be no unequivocal evidence of mutual mistake. *Chimart Assoc.*, 66 N.Y.2d at 574.

"Crucially, 'a mutual mistake must be as to a fact, and not as to the legal consequences of the contract into which the parties are entering.'" *Merrick Bank Corp. v. Chartis Specialty Ins. Co.*, No. 12-cv-7315, 2015 WL 4126780, at \*2 (S.D.N.Y. July 7, 2015) (quoting *Cobalt Multifamily Investors I, LLC v. Bridge Capital (USVI), LLC,* No. 06-cv-5738, 2007 WL 2584926, at \*9 (S.D.N.Y. Sept. 7, 2007)). Apple does not assert factual error; it is simply disappointed with the legal effect of the sale. There is no basis for reformation here and, having sold its assets, Apple lacks standing to proceed on any of its affirmative claims for relief.

### B.     Apple Has No Compensable Damages

Conceding that damages and causation are necessary elements of all of its claims (Def. Mem. at 17-18), Apple relies exclusively on 19 loans (reduced from 34) alleged to result in $140,000 of claimed damages, all of which remains conjectural and unrecoverable.

First, Apple presumes that the borrowers were contacted by Defendants through improper means. (Pl. Opp. Mem. at 19.) As indicated below, however, Apple essentially concedes that Defendants were entitled to take their Outlook contact databases, so there is no evidence of improper customer contact. Apple's complaints regarding other documents are not connected to the specific clients and deals pursued as Apple's damages.

Second, 14 of the 19 borrowers never previously transacted business with Apple. There is no evidence that Apple had connections to these borrowers independent of their relationships with Defendants, or that it attempted to contact any of them or otherwise sought their business upon the departures of Defendants. Thus, there is no basis to assume such borrowers would have

6

turned to Apple.  Indeed, five of those borrowers had attempted to obtain financing at Apple, but had been unsuccessful in doing so, making the assertion of damages to Apple even more attenuated.  (*See* Schoenstein Reply Aff. Ex. 1 and ¶ 4.)

Third, six of the 19 loans on Apple's list were applied for after Apple stopped taking applications, making it simply impossible that Apple could have done the transactions.

Fourth, 16 of the 19 loans were placed at banks Apple did not do business with.  Apple says now that there are "other banks," but it is pure speculation to say that the same customers could have obtained and would have agreed loans on the same terms at different banks.  (*See* Schoenstein Reply Aff. Ex. 1 and ¶¶ 5-7.)

All considered, of the 19 borrowers, only two were actual prior clients of Apple, and applied for a loan before Apple stopped accepting applications, and took loans at a bank that still did business with Apple.  One, Mr. Iwata, has been a friend of Breitstein for 20 years.  (Breitstein Aff. ¶ 60.)  The second, Ms. Iwashiro, is the daughter of a key referral source of Furer.  (Furer Aff. ¶ 61.)  These clients would have found their way to Defendants in any event and there is no causal basis to credit commissions for these transactions to Apple.  (*See* Schoenstein Reply Aff. Ex. 1 and ¶ 7.)

Apple makes no effort to revive damage allegations concerning the signing bonuses paid by GuardHill, attorney's or consultants' fees, or any other economic loss.  The lack of damages invalidates each and every claim herein, and Apple's case should be dismissed as a result.

### C.    <u>Apple's Underlying Claims Lack Merit</u>

Even beyond standing and damages, Apple's responses to the arguments of Defendants on the specific claims brought herein are not sufficient to support any of them.  Apple has withdrawn its tortious interference claim, but the other claims should also be dismissed.

1. **Breach of Duty of Loyalty**

As set forth above, an employee does not forfeit task-based compensation for alleged misconduct unrelated to the task.  Thus, and because no disgorgement of income or other damages are sought, any breach of loyalty here is theoretic only.  Moreover, while the parties may differ on what Defendants were permitted to take upon their departure, overstepping bounds in that regard in the haste of changing jobs hardly constitutes an actionable breach of loyalty against Apple under prevailing law.

2. **Theft of Business Property**

Apple relies on but misapplies *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283 (2007), and its progeny.  While one can have a claim for conversion of electronic files, *Thyroff* does not "alter the traditional rule requiring 'the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor.'"  *Geo Group, Inc. v. Community First Services, Inc.*, No. 11-cv-1711, 2012 WL 1077846, at *9 (S.D.N.Y. March 30, 2012); *accord Jung v. Chorus Music Studio, Inc.,*, No. 13-cv-1494, 2014 WL 4493795, at *8 (S.D.N.Y. Sept. 11, 2014).  Apple cites an outlier suggesting otherwise, *New York Racing Ass'n v. Nassau Regional Off-Track Betting Corp.*, 29 Misc. 3d 539, 546 (Sup. Ct. Nassau Cty. 2010), but that case involved a "live audio-visual simulcast" of horse racing and has no application here. Unable to show it is missing anything, Apple cannot sustain its conversion claim.

3. **Unfair Competition**

Apple concedes that the Outlook contact databases are not trade secrets.  *See, e.g.*, *Iron Mountain Information Management, Inc. v. Taddeo*, 455 F.Supp.2d 124, 139 (E.D.N.Y. 2006). It offers no authority suggesting an unfair competition claim arises from the taking of such a database.  The cases finding unfair competition from the taking of *client lists* rely on allegations that the employer itself "invested significant labor, skill, and money in developing" them.  *E.g.,*

8

*Barbagallo v. Marcum LLP*, 820 F.Supp.2d 429, 447 (E.D.N.Y. 2011).  Here, the electronic address books at issue were maintained by Defendants without comingling, with no sensitive customer information and, as a matter of industry practice, are routinely taken by loan originators from one firm to the next.  Apple alleges no expense or involvement in the process.  Therefore, Defendants correctly believed they were entitled to take the databases.  (Pl. Resp. Statement ¶¶ 59-69; DSMF ¶¶ 59-69.)  There are no damages alleged with response to any other items taken, and no further basis for an unfair competition claim.

### 4.    Breach of Contract

Contrary to its proclaimed strict adherence to contractual terms elsewhere, Apple defends its breach of contract claim by asking the Court to ignore two separate express disclaimers, written by Apple, stating that the Handbook is not a contract.  Apple should be held to those provisions and to New York law, which generally frowns on attempts to convert employee handbooks into breach of contract claims.  (Def. Mem. at 21-22.)

### 5.    Conspiracy

The conspiracy now alleged – the supposed taking of Form 1003s and 1008s – resulted in no damage or injury identified by Apple.  Those forms were discarded with virtually no use by Defendants.  The gathering of some copies to derive client birthdates hardly rises to the level of a civil conspiracy in any event, and this claim too should be dismissed.

### 6.    The Computer Fraud and Abuse Act

Apple suggests that it's claims under Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030(a)(2), 1030(a)(4) and 1030(a)(5), are supported by the findings of its computer consultant, but his affidavit and "report" are barred under Federal Rule of Civil Procedure 26(a)(2) and Federal Rule of Evidence 702.  Moreover, the post-employment "access" alleged by Apple is limited to Defendants receiving emails on their cell phones because Apple neglected to

change the codes.  (Pl. Resp. Statement ¶¶ 79-80; DSMF ¶¶ 79-80.)  No authority is offered to suggest a CFAA violation where the employer continues to forward emails to former employees in error.

### 7.    Constructive Trust

While not directly addressed in Defendants' opening memorandum, a constructive trust claim requires proof of "(1) a confidential or fiduciary relation, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment."  *Bankers Sec. Life Ins. Soc. v. Shakeridge*, 49 N.Y.2d 939, 940 (1980).  For reasons discussed with respect to the other claims herein, this claim is therefore precluded because Apple cannot establish an enforceable promise, a transfer made in reliance, or unjust enrichment.

### CONCLUSION

For the reasons set forth herein, and the reasons set forth in Defendants' opening papers, Defendants respectfully submit that their motion for partial summary judgment should be granted.

Dated: July 31, 2015
      New York, New York

Richard C. Schoenstein (RS-9376)
SATTERLEE STEPHENS BURKE &
BURKE LLP
230 Park Avenue
New York, New York 10169
Phone:  (212) 404-8707
Fax:  (212) 818-9606
rschoenstein@ssbb.com

Attorney for Defendants

10