UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

APPLE MORTGAGE CORP.,

               *Plaintiff*,

       v.

RICHARD BARENBLATT, KEITH FURER
DAVID BREITSTEIN and KEVIN UNGAR,

            *Defendants*.

Civil Action No. 13 CV 9233 (JGK)

**PLAINTIFF APPLE MORTGAGE CORP.'S
REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION FOR SUMMARY JUDGMENT
DISMISSING DEFENDANTS' COUNTERCLAIMS**

BERGER & WEBB LLP
Jonathan Rogin
7 Times Square, 27th Floor
New York, NY 10036
(212) 319-1900

*Attorney for Plaintiff
Apple Mortgage Corp.*

July 31, 2015

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ..................................................................................................................... 1

    I.    DEFENDANTS' COUNTERCLAIMS FOR UNPAID COMMISSIONS
        SHOULD BE DISMISSED ....................................................................................... 1

        A.  The Breach of Contract Counterclaim for Commissions Should Be Dismissed ........ 1

        B.  The Labor Law Counterclaim for Commissions Should Be Dismissed .................... 6

    II.   THE LABOR LAW COUNTERCLAIM FOR IMPROPER
        DEDUCTIONS SHOULD BE DISMISSED ............................................................... 7

    III.  THE COUNTERCLAIM FOR BONUSES SHOULD BE DISMISSED ....................... 9

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*Arbeeny v. Kennedy Executive Search, Inc.*,
71 A.D.3d 177 (1st Dep't 2010) ................................................................................. 7

*Bravia Capital Partners, Inc. v. Fike*,
2011 WL 6081345, 09-Civ-6375 (S.D.N.Y. Dec. 6, 2011) ....................................... 6

*G.K. Alan Assoc., Inc. v. Lazzari*,
44 A.D.3d 95 (2nd Dep't 2007), *aff'd*, 10 N.Y.3d 941 (2008) .................................. 4

*Hayes v. New York City Dep't of Corrections*,
84 F.3d 614 (2nd Cir. 1996) ................................................................................ 9-10

*Iron Mountain Mgm't, Inc. v. Taddeo*,
455 F. Supp. 2d 124 (E.D.N.Y. 2006) ...................................................................... 5

*Karic v. Major Automotive Cos.*,
992 F. Supp. 2d 196 (E.D.N.Y. 2014) ................................................................... 7, 8

*Metropolitan Nat'l Bank v. Adelphi Academy*,
23 Misc. 3d 1132(A), 2009 WL 1477998 (Sup. Ct. Kings County 2009) ................. 3

*NAS Electronics, Inc. v. Transtech Electronics Pte Ltd.*,
262 F. Supp. 2d 134 (JGK) (S.D.N.Y. 2003) .......................................................... 1

*Pachter v. Bernard Hodes Group, Inc.*,
10 N.Y.3d 609 (2008) ........................................................................................... 7, 8

*Simas v. Merrill Corp.*,
2004 WL 213013, 02-Civ-4400 (S.D.N.Y. Feb. 4, 2004) ......................................... 6

*Yudell v. Israel & Assoc.*,
248 A.D.2d 189 (1st Dep't 1998) .............................................................................. 6

## Rules

3 NYCRR § 420.20 .......................................................................................................... 2

## Treatises

23 WILLISTON ON CONTRACTS (4th ed.), § 63:3 ............................................................ 3

Plaintiff Apple Mortgage Corp. ("Apple") respectfully submits this reply memorandum of law in further support of its motion for summary judgment dismissing the counterclaims filed against it by defendants Richard Barenblatt, Keith Furer, David Breitstein and Kevin Ungar ("Defendants").

## ARGUMENT

### I.    DEFENDANTS' COUNTERCLAIMS FOR UNPAID COMMISSIONS SHOULD BE DISMISSED

Defendants assert two counterclaims for the same unpaid commissions, one asserting breach of contract (the First Cause of Action), and one under New York's Labor Law (the Fourth Cause of Action).  Both should be dismissed.

#### A.    The Breach of Contract Counterclaim for Commissions Should Be Dismissed

As set forth in Apple's moving brief, "[u]nder New York law, when one party has committed a material breach of a contract, the non-breaching party is discharged from performing any further obligations under the contract…." *NAS Electronics, Inc. v. Transtech Electronics Pte Ltd.*, 262 F. Supp. 2d 134, 145 (JGK) (S.D.N.Y. 2003) (granting defendant's motion for summary judgment on plaintiff's breach of contract claim based on plaintiff's prior breach of the agreement).

Defendants do not deny that their Compensation Agreements, pursuant to which they assert their contract claim to unpaid commissions, stated that they must comply with "all Federal and State laws."  Instead, and without any basis in the agreements at issue, Defendants deny that this language actually required them to follow "all Federal and State laws."  *See* Defendants' Counterstatement of Material Facts in Opposition to Plaintiff's Motion for Summary Judgment

(Dkt. 64) ("Defs. Rule 56 Response"), ¶ 17.  A plain reading of the Compensation Agreements imposes this duty on Defendants.

Defendants also do not dispute that Section 420.20(a)(7) of New York's Banking Department Regulations, which applied to them as mortgage loan originators at Apple, provides that "[n]o MLO shall . . . [d]ownload or remove borrowers' or mortgage loan applicants' loan files or other information from the premises or automated systems of an originating entity without permission of the originating entity."  3 NYCRR § 420.20.  And, Defendants Breitstein, Ungar and Furer admit taking from Apple private client information from Apple (*i.e.*, social security numbers and dates of birth).  *See* Defs. Rule 56 Response ¶¶ 34, 41-43, 59-61.[1]

Acknowledging this reality, Defendants instead make the following three illogical arguments against summary judgment:  (i) the Compensation Agreements do not specifically refer to the foregoing Banking Department regulation; (ii) there is no allegation in Apple's Complaint that Defendants' removed any "loan applicants' loan files or other information"; and (iii) there has been no finding that Defendants violated any laws.  (Defs. Opp. Br. at 19.)  Taking these in order, Defendants cannot truly expect the Court to accept that a provision requiring them to obey all state and federal laws must actually recite all such state and federal laws in order to be binding.  More likely, they are arguing that NY state banking department regulations are not laws.  Defendants offer no basis for this fantastic assertion, particularly in the highly regulated

---

[1]      Apple notes that Defs. Rule 56 Response ¶¶ 41-43 and 59-61 are couched as denials by Furer and Ungar that they took private client information from Apple.  However, a review of the narrative contained in those paragraphs following the word "Denied" makes clear that these Defendants do not actually contest taking "summary sheets printed off the Encompass database at Apple," which are the sheets containing social security numbers and dates of birth.

2

world of mortgage banking where loan originators are trusted with sensitive personal and

financial information, and where the regulations governing the protection of such information are

codified in the NYCRR.

Nor is it of any moment that there is no allegation in Apple's Complaint that Defendants

took private client information from Apple.  Apple is not pursuing a cause of action based on

such taking.[2]  Rather, such taking constitutes a defense to Defendants' counterclaims based on

their own breach of contract.  Regarding the last of these arguments by Defendants, the Court is

well-positioned, based on the plain language of the foregoing Banking Department regulation

and Defendants' own admissions, to conclude that they violated such law.

Defendants next argue that even if they did breach the Compensation Agreements, such

breach was not material.  Under New York law, "[a] breach is material if a party fails to perform

a substantial part of the contract or one or more of its essential terms or conditions, the breach

substantially defeats the contract's purpose, or the breach is such that upon a reasonable

interpretation of the contract, the parties considered the breach as vital to the existence of the

contract." *Metropolitan Nat'l Bank v. Adelphi Academy,* 23 Misc. 3d 1132(A), 2009 WL

1477998 at * 3 (Sup. Ct. Kings County 2009) (quoting 23 WILLISTON ON CONTRACTS (4th ed.), §

63:3).  Here, the Compensation Agreements were all of two pages long, and one of the few

numbered paragraphs begins with the requirement that the Defendants follow all Federal and

State laws.  These agreements were signed in 2012, a time when the need to protect private client

---

[2]        It is worth noting that throughout their brief, Defendants refer to the Form 1003s and

1008s that they took from Apple, forms which contained client social security numbers and dates

of birth, simply as "summary sheets," plainly hoping the Court will overlook the gravity of their

misconduct.

information, both inside and outside of the mortgage industry, was well known.  For Defendants to suggest that keeping secure Apple customers' social security numbers and dates of birth was not one of their most critical obligations as loan officers (or even that they would have been able to keep their jobs had they refused to agree to this provision), belies all common sense.  Their agreement to keep private client information confidential and not to remove same from Apple was material.

Defendants' breach of their duties of loyalty also bars their contract claim.  As argued by Apple in its moving brief, where an employee is terminated and sues for unpaid future compensation, his disloyalty allows his employer to avoid such payments.  *See G.K. Alan Assoc., Inc. v. Lazzari*, 44 A.D.3d 95, 102 (2nd Dep't 2007), *aff'd*, 10 N.Y.3d 941 (2008).  Defendants did not even attempt to distinguish this case in their opposition.  Rather, they relied on more general "faithless servant" cases, which typically address affirmative claims for disgorgement, the like of which are not present in this case.  (Defs. Br. at 22.)

Similarly unpersuasive is Defendants' argument that they were not disloyal to Apple.  Without basis they characterize as "feigned" Apple's actual outrage at their surreptitious printing, e-mailing and downloading of Apple business documents, customer and contact lists developed by them on behalf of Apple.[3]  And, while Defendants deny that the provisions in the

---

[3]      Defendants oddly challenge the Affidavit of Emanuel Mamakas and the report he prepared (which was filed by Apple in support of this summary judgment motion), claiming that Apple did not follow the appropriate steps to offer Mr. Mamakas as an expert witness.  (Defs. Opp. Br. at 20.)  Defendants mischaracterize Mr. Mamakas' role, which is that of a fact witness who conducted an investigation of Apple's computers after Defendants' group resignation.  Apple identified Mr. Mamakas as a fact witness in interrogatory responses in this case, more

4

Apple employee handbook constitute a legally enforceable agreement by them to keep such information confidential, they do not deny that they signed an acknowledgement of receipt of those handbooks. (Defs. Rule 56 Response ¶¶ 5-8.)  Although Apple might not have the ability to sue Defendants for breach of contract for violating the obligations set forth in the handbook, it is not doing so.  The language in the handbook relied upon by Defendants does not preclude Apple from arguing that certain conduct by Defendants constitutes a breach of the duty of loyalty.  To accept this contention by Defendants would render meaningless their having signed the acknowledgement in the first place, and would ignore their testimony previously cited by Apple that they believed they were agreeing to the terms of the handbook when they signed it.[4]

---

than a year ago.  (*See* Rogin Reply Decl., Ex. A at 13.)  In January 2015, Apple offered Defendants the opportunity to inspect the computers they used at Apple and Apple's server (*see id.*, Ex. B), and in February 2015, Apple produced the computer files reviewed by Mr. Mamakas. (*See id.*, Ex. C).  For whatever reason, Defendants chose never to depose Mr. Mamakas regarding his investigation.  In any event, Mr. Mamakas' findings as to the e-mailing of contact lists by Defendants in anticipation of leaving Apple are not denied by Defendants, rendering the challenge to his potential testimony even more specious.  (*See* Defs. Rule 56 Response ¶¶ 34, 40 [denial by Furer which contains buried admission that he "sent Sheerar some current lists"], 47 [denial by Furer which contains buried admission that he "may have cleaned out some folders"].)

[4]      Defendants also cite *Iron Mountain Mgm't, Inc. v. Taddeo*, 455 F. Supp. 2d 124 (E.D.N.Y. 2006), for the proposition that their taking of their own Outlook contact lists was not improper.  (Defs. Opp. Br. at 22-23.)  That case involved a claim for misappropriation, not an allegation that such conduct violated the duty of loyalty.

### B.   The Labor Law Counterclaim for Commissions Should Be Dismissed

As this Court has held, "[f]ailure to establish a contractual right to wages necessarily precludes a statutory claim under New York's labor law." *Simas v. Merrill Corp.*, 2004 WL 213013 at *2, 02-Civ-4400 (S.D.N.Y. Feb. 4, 2004) (citation omitted).  Here, Defendants have no contractual right to the commissions or bonus payments sought, because of their own breaches of their Compensation Agreements as described above.

Moreover, and as Apple argued in its moving brief, "an at-will employee will be entitled to post-discharge commissions only if the employment agreement expressly provides for such compensation." *Bravia Capital Partners, Inc. v. Fike*, 2011 WL 6081345, 09-Civ-6375 at *3 (S.D.N.Y. Dec. 6, 2011) (citations omitted).  Notwithstanding Defendants' attempt to limit *Bravia* to situations where the claim for commissions is based on new transactions which came into existence after the cessation of employment, this proposition is not borne out by the actual decision.  Similarly misguided is Defendants' lengthy reliance upon *Yudell v. Israel & Assoc.,* 248 A.D.2d 189 (1st Dep't 1998) (*see* Defs. Opp. Br. at 16-17).  In *Yudell*, the plaintiff's agreement referenced her entitlement to commissions upon "origination" of a placement.  Here, the Compensation Agreements contain no such language referencing origination, but only provide for payment of a commission to Defendants dependent on the "loan amount," language which presumes the actual making of a loan and completion of tasks required to bring a loan to closing.  The Compensation Agreements are easily distinguishable from the agreement at issue in *Yudell*, and Defendants' effort to use *Yudell* to get around *Bravia's* basic proscription against

post-termination commissions in an at-will context absent express writing to the contrary, is unpersuasive.[5]

## II.   THE LABOR LAW COUNTERCLAIM FOR IMPROPER DEDUCTIONS SHOULD BE DISMISSED

Apple's moving brief articulated why Defendants' improper deduction claim (the Fifth Cause of Action) is barred by *Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609 (2008).[6] Defendants try and get around *Pachter* by relying upon *Karic v. Major Automotive Cos.*, 992 F. Supp. 2d 196 (E.D.N.Y. 2014), for the proposition that their inclusion of the $276 deduction on their own commission calculations submitted to Apple is irrelevant, because *Pachter*'s holding on this point only applies in the absence of an "unambiguous written contract." (Defs. Opp. Br. at 12-13.) This argument fails on several fronts. First, the most the plaintiff in *Karic* did was

---

[5]    *Arbeeny v. Kennedy Executive Search, Inc.*, 71 A.D.3d 177 (1st Dep't 2010), is another case relied upon by Defendants in similar fashion, to try and shift the burden by arguing that because the Compensation Agreements did not foreclose the possibility of receiving post-termination commissions, they are entitled to them. That case involved a contract that specifically referred to an employee's entitlement to commissions on placements "arranged." *Id.* at 180. Here, there is no such language in the Compensation Agreements.

[6]    Though Defendants now try to add to their damage claim by asserting additional improper deduction damages relating to "leads, advertising [and] wages to other employees" (Defs. Opp. Br. at 12), they cannot deny that the counterclaims as pleaded did not include such alleged deductions in their "improper deduction" claim, nor can they deny that the only statement of damages that they have put forth in this case did not include such damages. (Rogin Decl, Ex. BB [Dkt. 48].)

7

silently acquiesce by failing to object to deductions made from his paycheck by his employer. *Karic*, 992 F. Supp. 2d at 202.  Here, Defendants actively participated in the deduction process by including the now-challenged $276 deduction on the very commission worksheets they prepared to set forth the amount of money they believed they were owed by Apple on a particular deal.[7]  Second, the Court in *Karic* held that "no provision of the contracts permits such silent unwritten alteration." *Id.*  Here, the Compensation Agreements do not share this quality. In fact, because they did *not* provide that any changes thereto must be in writing, Defendants were free to consent to the $276 deduction notwithstanding the silence of the Compensation Agreements on this point, as they did.  (*See* Rogin Decl., Ex. N-Q.)  Third, even if Defendants' argument otherwise merited consideration, it ignores the fact that they all signed their Compensation Agreements in July 2012.  Thus, for all of the improper deductions allegedly made before that point, Defendants' own conduct in including same on their commission worksheet is fatal, under both *Pachter* and *Karic*, even following Defendants' logic.

---

[7]    Defendants' claims that they were "forced" to include the $276 deduction and that Apple somehow "misled" them into believing that the deduction was an actual FICA deduction (*see* Defs. Opp. Br. at 13-14), are not credible.  Defendants offer no basis to accept their contention that when they prepared commission worksheets based upon different amounts of commissions, they actually believed that the amount of FICA to be withheld and transmitted by Apple to the appropriate government agency was, without fail, the identical sum of $276.  Defendants knew that this charge, which they voluntarily included on their commission worksheets, had nothing to do with actual FICA.

8

### III.    THE COUNTERCLAIM FOR BONUSES SHOULD BE DISMISSED

As set forth in Apple's moving brief, Defendants' bonus claim is based upon language in the Compensation Agreements stating that Defendants were "eligible" for certain payments. Breitstein in his deposition testimony conceded that such payments were "discretionary." (Breitstein Tr. [Rogin Decl., Ex. D] at 259:2.)  Furer testified that he though he was entitled to his bonus payments because in the past, they were "paid and paid and paid every quarter." (Furer Tr. [Rogin Decl. Ex. E] at 203:25.)  Barenblatt based his claimed entitlement to the bonuses on the fact that "it was business as usual that on each end of the quarter we were expected to be paid the overage."  (Barenblatt Tr. [Rogin Decl., Ex. F] at 50:24-51:2.)  And Ungar testified similarly that "over the course of time . . . [he] expected" to get paid a bonus to which he was eligible.  (Ungar Tr. [Rogin Decl., Ex. G] at 251:13-17.)  As the foregoing indicates, when questioned on this topic, all of the Defendants testified as to expectations based upon a course of conduct, but none described any independent oral agreement by Apple to pay bonuses.  What is clear is that Defendants expected to get their bonuses each quarter if they hit their numbers.  What is not clear, or even evident from their testimony, is that Apple ever agreed to make such payments.

Obviously mindful that their testimony and the plain language of the Compensation Agreements do not support their bonus claims, Defendants offer affidavits which each simply stated that "Apple agreed orally to pay such amounts in regular quarterly intervals and did so at all times prior to my departure."  (Barenblatt Aff. ¶ 10; Breitstein Aff. ¶ 10; Furer Aff. ¶  10; Ungar Aff. ¶ 10.)  No Defendant has offered any facts at all as to where, when or how these alleged "oral" agreements by Apple to pay bonuses was ever manifest.  Their affidavits should be ignored in this regard. *See Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619

(2nd Cir. 1996) (holding that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony") (citations omitted).

## CONCLUSION

For all of the foregoing reasons, Apple respectfully requests that this Court issue an Order:  (i) granting Apple's summary judgment motion in its entirety; (ii) dismissing Defendants' counterclaims in their entirety; and (iii) granting such other and further relief in favor of Apple as this Court deems just and proper.

Dated: New York, New York
　　　　July 31, 2015

BERGER & WEBB, LLP

By: _____
　　　Jonathan Rogin
　　　(jrogin@bergerwebb.com)

7 Times Square, 27th Floor
New York, NY 10036
(212) 319-1900

*Attorney for Plaintiff Apple Mortgage Corp.*

87217.1